IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

ROBERT D. JOHNSTON; and
MELANIE K. JOHNSTON                                                    PLAINTIFFS

                v.                           Civil No. 06-3002

JASON BRISCO, in his official
capacity as an officer of the Harrison
Arkansas Police Department and in his
individual capacity; et al.,                                            DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the undersigned for report and recommendation are the motions to dismiss filed by separate defendant Johnny L. Nichols, attorney-at-law (Doc. 87), separate defendant Erwin L. Davis, attorney-at-law (Doc. 96), and separate defendants Michael Dodson, attorney-at-law, and Joseph Paul Smith, attorney-at-law (Doc. 101). The plaintiffs responded to the motion to dismiss filed by Johnny L. Nichols (Doc. 97).

## BACKGROUND

Plaintiffs bring this case under the provisions of 42 U.S.C. §§ 1981, 1983, 1985, 1986, 1987[1] and 1988. They maintain their First, Second, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights have been violated. Plaintiffs also purport to assert a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO).

---

[1] Section 1987 authorizes the United States attorneys, marshals, deputy marshals, the United States magistrate judges, with the power to arrest, imprison, or bail offenders, and any other officer specifically empowered by the President to institute prosecutions of the violations of certain civil rights statutes. Obviously, plaintiffs have no authority to prosecute the defendants under this statute.

AO72A
(Rev. 8/82)

According to the amended complaint, on January 3, 2004, plaintiffs allege that while traveling northbound on Highway 65 Officer Jason Brisco began following the plaintiffs' vehicle. *Complaint* at ¶ 34. Robert Johnston was driving and Melanie Johnston and their two children were passengers in the vehicle.[2] *Id.*

Brisco followed the plaintiffs' vehicle approximately ten miles to the Harrison city limits. *Complaint* at ¶ 35. After reaching Harrison, Brisco initiated a traffic stop with lights and siren. *Id.*

Plaintiffs allege Robert immediately pulled into a well-lighted service station. Brisco indicated the reason for the stop was that Robert had been driving all over the road and going about six miles over the speed limit. *Complaint* at ¶ 36. Plaintiffs state they knew this was not true as they were using their speed control. *Id.* at ¶ 37. Further, they believed the dash camera in the patrol vehicle would negate Brisco's claim that they were driving all over the road. *Id.*

Brisco returned to the car and told Robert to exit the vehicle. *Complaint* at ¶ 38. Robert asked why he had to get out of the car. *Id.* at ¶ 39. According to plaintiffs, Brisco refused to give a reason and became aggressive and threatening. *Id.* at ¶ 41.

Plaintiffs allege Brisco pulled out a club and threatened to bust out the car window. *Complaint* at ¶ 41. Robert then asked to call for an attorney and was denied the right. *Id.* at ¶¶ 43-44. Brisco then lunged into the vehicle and struck Robert with his fist. *Id.* at ¶ 45. Brisco also smashed the window with his club. *Id.* at ¶ 46.

---

[2] To avoid confusion, we will refer to the Johnstons by their first names.

To prevent further violence, plaintiffs state they drove away. *Complaint* at ¶ 47. As they drove away, plaintiffs state Brisco hit the window where the plaintiffs' son was seated. *Id.* at ¶ 48.

Plaintiffs allege they were pursued by Brisco and other officers for two hours before their vehicle was disabled by gunfire and they fled on foot. *Complaint* at ¶¶ 49-54. Plaintiffs assert they were pursued by all terrain vehicle, dogs, and helicopter. *Id.* at ¶ 55. Plaintiffs' children, who were age two and age six at the time, were with them. *Id.* at ¶ 57.

On January 5, 2004, plaintiffs and their children were surrounded by a SWAT team and ordered to lie face down on the ground. *Complaint* at ¶ 57. Plaintiffs allege they were handcuffed but not informed that they were under arrest and not informed of any charges. *Id.* at ¶ 58.

Once in custody, Robert was confined in a padded cell. *Complaint* at ¶ 59. Plaintiffs allege the children were interrogated. *Id.* James Johnson of the Arkansas Department of Human Services, Division of Children and Family Services (DHS), advised Melanie that the children were being taken into custody. *Id.* at ¶ 61. Melanie provided the name, address, and phone number of the children's grandparents, who were locally available and willing to care for the children. *Id.* Despite this, the children were put in foster care. *Id.*

Bail was set in the amount of $25,000 for Melanie. *Complaint* at ¶ 64. Melanie was released and although the seventy-two hour hold pursuant to which the DHS took custody of the children had expired, DHS did not return the children to their parents. *Id.* at ¶ 65.

Bail was set in the amount of $150,000 for Robert. *Complaint* at ¶ 67. Robert was released on January 8th. *Id.* On January 8th, DHS filed a petition for emergency custody which

-3-

plaintiffs alleged falsely stated they were currently incarcerated and there were no known persons who had any claim to custody or visitation. *Id.* at ¶ 68. Plaintiffs assert they did not receive copies of any petitions, orders, or other documents regarding the custody of their children until November of 2004. *Id.* at ¶ 70.

On January 9, 2004, the plaintiffs appeared in court before Judge John Putman. *Complaint* at ¶ 73. They were represented by Johnny Nichols. *Id.* Plaintiffs indicate they were both charged with aggravated assault on Brisco as a result of a lie he told. *Id.* at ¶ 74. Specifically, Brisco claims his arm was caught in the window and he had to break the window to free himself. *Id.*

On January 13, 2004, plaintiffs appeared before Judge Gary Isbell and were given an immediate unsupervised extended home visit with their children. *Complaint* at ¶ 77. However, the children remained in the custody of DHS because of the continued incarceration of the parents. *Id.* Plaintiffs point out that they were not incarcerated at the time. *Id.*

On February 4, 2004, Johnny Nichols filed a petition to withdraw as plaintiffs' counsel. *Complaint* at ¶ 81. Plaintiffs then hired Erwin Davis to represent them. *Id.* On February 10, 2004, an adjudication hearing was held and the children were ordered returned to their home with their parents. *Complaint* at ¶ 83.

Plaintiffs allege that Davis failed to act in their best interests and the prosecuting attorney failed to provide discovery in a timely manner. *Complaint* at ¶¶ 87-92. Ten months after the traffic stop, plaintiffs state new and vindictive charges of simultaneous possession of drugs and a firearm were filed against them. *Id.* at P 97.

Plaintiffs filed a complaint with the Arkansas Judiciary Discipline Committee against Judge Webb. *Complaint* at ¶ 105. Despite this, Judge Webb refused to recuse himself. *Id.*

Plaintiffs then retained Michael Dodson. *Complaint* at ¶ 106. On April 8, 2005, when plaintiffs were to appear at the Boone County Courthouse, Dodson called to advised them that the Harrison Police Force and all the Boone County Sheriff's Department were at the courthouse as a show of force against the plaintiffs. *Id.* at ¶¶ 107-108. Plaintiffs allege there were snipers on the roof and they were told to exit the vehicle with their hands in the air. *Id.* at 108. According to plaintiffs, someone had reported to the Harrison Daily Times that the plaintiffs had made some type of threat. *Id.* at 109.

Plaintiffs assert they had counsel to represent them and declined to subject their children to another nightmarish episode in Boone County. *Complaint* at ¶ 110. Although Dodson appeared, he did not file an entry of appearance, and plaintiffs allege this facilitated the adding of failure to appear charges to their already pending charges. *Id.*

On April 27, 2005, the plaintiffs were arrested and again jailed in Boone County. *Complaint* at ¶¶ 111-112. Dodson entered an appearance for the plaintiffs. *Id.* at ¶ 111. However, plaintiffs states he then ignored their demands that he request a change of venue, file a motion for dismissal, and refused to accept their phone calls. *Id.* at ¶ 113. When Dodson did meet with them, plaintiffs state it was in the jail's interrogation room that had audio and video recording equipment used by law enforcement. *Id.*

Plaintiffs maintain the conditions they were incarcerated under were deplorable. *Complaint* at ¶ 114. They maintain they were denied outside exercise, their meals contained no fresh fruit and vegetables and contained no variety, the bed linens were not laundered on a

AO72A
(Rev. 8/82)

regular basis, video cameras were in constant use and jailers, regardless of their sex, were able to view all prisoners, the woman's shower stall could be easily seen from the parking lot, and they had no access to a law library. *Id.* at ¶ 114-121.

On July 22, 2005, Dodson and Joseph Paul Smith informed plaintiffs a plea agreement had been worked out for them that involved probation for both the plaintiffs. *Complaint* at ¶ 122. Plaintiffs agreed to accept the plea agreement. *Id.* However, plaintiffs later found out they had been deceived. *Id.* at ¶ 123. The agreement was actually five years probation for Melanie and a three year prison sentence followed by probation for Robert. *Id.* at ¶¶ 123-124. Plaintiff assert that when they paid Dodson and Smith in April of 2005 they were told if the case ended without trial there would be a substantial refund of the fee. *Id.* at ¶ 125. However, no refund has been made. *Id.* Plaintiffs also state they never received a copy of the plea agreement they were forced to sign. *Id.* at ¶ 126.

The complaint then asserts sixteen separate counts. The counts allege violations of various constitutional rights and the last count asserts a violation of the Racketeer Influenced Corrupt Organizations Act (RICO).

## **DISCUSSION**

As noted above, motions to dismiss have been filed by Johnny L. Nichols, Erwin Davis, Michael Dodson, and Joseph Paul Smith. These individuals are attorneys retained by the plaintiffs to represent them in connection with the criminal charges filed against them and/or to assist them in connection with the custody proceedings involving their two children.

Johnny L. Nichols brings this motion to dismiss pursuant to the provisions of Rules 12(b)(6) and Rule 12(c) of the Federal Rules of Civil Procedure. (Doc. 87). He contends the

complaint fails to state a claim upon which relief can be granted. Plaintiffs filed a response to the motion to dismiss on October 4, 2006. (Doc. 97 & Doc. 98).

Erwin Davis moves to dismiss the action for failure to state a claim. (Doc. 96). He contends that he is a privately practicing attorney and cannot be considered a state actor. Further, he contends the plaintiffs have failed to sufficiently plead any alleged violations of their rights under any law with particularity and specificity.

Michael Dodson and Joseph Paul Smith moves to dismiss the claims against them pursuant to Rule 12(b)6) and Rule 10(c) of the Federal Rules of Civil Procedure. (Doc. 101). They contend they are private attorneys engaged in the practice of law and are not involved in any state action. Further, they contend the plaintiffs have failed to state claims under the federal statutes cited.

"On a motion for judgment on the pleadings, a court applies the same standard as in a 12(b)(6) motion for failure to state a claim." *Glover v. Merck & Co., Inc.*, 345 F. Supp. 2d 994, 996 (D. Minn. 2004)(*citing St. Paul Ramsey County Medical Ctr. v. Pennington County, S.D.*, 857 F.2d 1185, 1187 (8th Cir. 1988)). In considering a motion to dismiss for failure to state a claim, we must construe the complaint liberally in favor of the plaintiffs and accept the allegations of the complaint as true. *Hudson v. Norris*, 227 F.3d 1047, 1054 (8th Cir. 2000).

Plaintiffs proceed pro se. The court should not dismiss a pro se complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Holloway v. Lockhart*, 792 F.2d 760, 761-62 (8th Cir. 1986)(citations omitted). Nevertheless, in treating the factual allegations of the complaint as true pursuant to Rule 12(b)(6), the court "do[es] not ... blindly accept the legal conclusions drawn by

the pleader from the facts." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990)(citations omitted).

As noted above, the complaint contains sixteen separate counts. In count one, plaintiffs allege a violation of their First Amendment rights. Specifically, they allege they were denied the right to have the facts of their case heard. *Complaint* at ¶ 128. They maintain Judge Webb refused to rule on motions filed in his court or even acknowledge their multiple requests that he review the facts of the case, the evidence of their innocence, and the violations of their civil rights.

In count two, plaintiffs allege a violation of their Second Amendment right to keep arms. They point out a pistol that was in their vehicle was seized by the Harrison Police Department. *Complaint* at ¶ 132. They allege the pistol remains in the possession of the police department and all motions to return the seized property have been ignored by the State of Arkansas and Judge Webb. *Id.* Further, they allege their right to keep arms has forever been infringed by their forced acceptance of the false felony charges. *Id.* at ¶ 133.

In count three, plaintiffs allege violations of their Fourth Amendment right to be free from unreasonable searches and seizures. Plaintiff allege Brisco had no reason to demand that Robert exit his vehicle. *Complaint* at ¶ 138. Further, they allege the property that was seized was not illegal to possess and was not used in any crime. *Id.* at ¶ 139.

In count four, plaintiffs allege violations of the Fifth Amendment right to due process. Specifically, they allege they were deprived of their freedom and property although they had committed no crime. *Complaint* at ¶ 144. They indicate an indictment was issued by Fred Kirkpatrick based on a false affidavit prepared by Brisco. *Id.* They assert a probable cause order was signed by Judge Putman although he had spoken to neither of the plaintiffs. *Id.* at ¶ 145.

Further, plaintiffs allege they were denied the right to contact anyone, denied the right to a prompt first appearance, and denied the right to a formal arraignment. *Id.* at ¶ 146.

In count five, entitled violation of Sixth Amendment right to trial by an impartial jury, plaintiffs allege that they hired counsel to assist in their defense, Nichols, Davis, Dodson, and Smith, and no counsel assisted or defended them. *Complaint* at ¶ 153. Plaintiffs allege Nichols, Davis, Dodson, and Smith acted contrary to plaintiffs' bests interests and direct instructions. *Id.* Plaintiffs allege the defendants acted under the color and pretense of state law, statutes, ordinances, regulations, or customs. *Id.* at ¶ 155. It is further alleged defendants adopted a policy of the wrongful execution of judgments and deprivation of due process rights and other civil rights of citizens including the plaintiffs. *Id.*

In count six, plaintiffs allege a violation of the Eighth Amendment prohibition against excessive bail and cruel and unusual punishment. Plaintiffs allege excessive bail was set in January of 2004 and again in May of 2005. *Complaint* at ¶¶ 160-161. Further, they contend the amount of the fines were excessive. *Id.* at ¶ 162.

In count seven, plaintiffs assert violations of their Fourteenth Amendment Due Process Right to a Fair and Impartial Trial. Plaintiffs allege Nichols, Davis, Dodson, and Smith were employed to assist the plaintiffs and ensure their rights were exercised for their benefit. *Complaint* at ¶ 170. Instead, it is alleged plaintiffs were denied such assistance and plaintiffs' rights were waived without their knowledge or consent. *Id.*

In count eight, plaintiffs assert violations of their Fourteenth Amendment Procedural Due Process rights. Plaintiffs allege they were not provided with paperwork involving the case, hearings on the custody issues were held ex parte, and they were informed of a court appearance with less than twenty-four hours notice. *Complaint* at ¶ 177. While the defendant attorneys are

AO 72A
(Rev. 8/82)

not mentioned by name in this count, it appears that at least some of the actions on which this claim are based may have been taken by one or more of the attorneys retained by the plaintiffs.

While neither Nichols, Davis, Dodson, nor Smith are mentioned by name in count nine, violations of 42 U.S.C. § 1981, Equal Rights Under the Law, plaintiffs do refer to legal professionals. *Complaint* at ¶ 187. Plaintiffs allege the defendants used their status as, among other things, legal professionals to the impairment, injury and detriment of plaintiffs. *Id.*

In count ten, plaintiffs assert general violations of their civil rights under 42 U.S.C. § 1983. They allege:

> Defendants, under color of statute, ordinance, or custom subjected the Plaintiffs to the deprivation of rights, privileges and immunities secured by the United States Constitution and laws including but not limited to: (a) Deprivation of the right to be secure in his person; (b) Deprivation of the protection against excessive bail, fines, and cruel and unusual punishment; (c) Deprivation of the right to due process at law; (d) Deprivation of the right of equal protection under the law; (e) Deprivation of the right to redress; (f) Deprived of rights to privileges [and] immunities of the law; (g) deprived of the rights of free speech; and (h) Deprived of the right to counsel and access to the courts.

*Complaint* at ¶ 193.

Count eleven, conspiracy to interfere with rights under 42 U.S.C. § 1985, although it does not mention Nichols, Davis, Dodson, or Smith by name, alleges all defendants conspired to, and did deter, by force, intimidation, and threat the due course of justice with the intent to deny the plaintiffs the equal protection of the laws. *Complaint* at ¶¶ 200-201. Similarly, count twelve, action for neglect to prevent under 42 U.S.C. § 1986, alleges each and every defendant had the opportunity and obligation to assist the plaintiffs in their pursuit of justice and instead chose to further the wrongs against the plaintiffs. *Id.* at ¶ 208.

AO72A
(Rev. 8/82)

Count thirteen purports to allege violations of 42 U.S.C. § 1988. Count fourteen alleges that as the result of the wilful actions of each and every defendant the plaintiffs were imprisoned against their will and against the laws of the United States. *Complaint* at ¶ 209. Count fifteen alleges a First Amendment retaliation claim. Plaintiffs assert that all of the defendants knowingly, with sadistic and malicious intent, acting in concert, attempted to circumvent justice by implementing and advocating a tidal wave of fear, intimidation, and violence against the plaintiffs. *Complaint* at ¶ 226. Finally, in count sixteen, plaintiffs maintain that each and every defendant has violated RICO and caused the plaintiffs to be imprisoned against their will. *Id.* at ¶ 236.

Section 1981 "provides that all persons shall have the same right to 'make and enforce contracts' and the right to 'the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004)(quoting 42 U.S.C. § 1981(a)-(b)).

In this case, plaintiffs rely upon the Full-and-Equal Benefit clause of § 1981 rather than the Right-to-Contract clause. To establish a prima facie case of discrimination under this clause of § 1981, plaintiffs must show that: (1) they are members of a protected class; (2) the defendants intended to discriminate on a constitutionally prohibited basis; and (3) that the discrimination interfered with a protected activity as defined in § 1981. *Bediako v. Stein Mart, Inc.*, 354 F.3d at 839. Further, a showing of state action is required. *Adams v. Boy Scouts of America-Chickasaw Council*, 271 F.3d 769, 777 (8th Cir. 2001)(citing *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001)).

AO72A
(Rev. 8/82)

Although plaintiffs appear to allege that the conduct of all defendants amounts to a violation of § 1981, the complaint contains no allegation that Nichols, Davis, Dodson, or Smith interfered with plaintiffs' participation in a "protected activity." Instead, at most, the complaint contains allegations that plaintiffs paid these attorneys to represent them with respect to criminal charges lodged in Boone County and the attorneys' performance did not live up to their expectations and was in fact detrimental to plaintiffs. "Even though civil-rights pleadings are viewed liberally, '[s]uch pleadings must nonetheless not be conclusory and must set forth the claim in a manner which, taking the pleaded facts as true, states a claim as a matter of law.'" *Bediako*, 345 F.3d at 839 (*quoting Nickens v. White*, 536 F.2d 802, 803 (8th Cir. 1976)). Accordingly, plaintiffs' § 1981 claim as against these defendants should be dismissed.

Under counts eleven and twelve, plaintiffs allege the defendants have violated 42 U.S.C. § § 1985 & 1986. The plaintiffs' factual allegations do not support claims based upon these statutes. A claim under § 1985 is premised upon the existence of an alleged conspiracy which must be motivated by a class-based animus. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268-69 (1993). Plaintiffs have not alleged they are members of a protected class nor have they alleged that the alleged conspiracy was based upon a class-based animus. Finally, no claim exists under § 1986 as in order to be liable under § 1986 a defendant must have neglected or refused to prevent a § 1985 conspiracy. *See Steele v. City of Bemidji*, 257 F.3d 902, 906 (8th Cir. 2001)(*citing Brandon v. Lotter*, 157 F. 3d 537, 539 (8th Cir. 1998)); *see also Gatlin v. Green*, 362 F.3d 1089, 1095 (8th Cir. 2004)(a *§ 1986* claim must be predicated upon a valid *§ 1985* claim).

AO72A
(Rev. 8/82)

In count thirteen, plaintiffs allege violations of 42 U.S.C. § 1988. Section 1988 does not provide for a separate cause of action. *See e.g., Rose v. Kenyon College*, 211 F. Supp. 2d 931, 939 (S.D. Ohio 2002). Section 1988 merely provides for the application of common law in civil rights proceedings brought under other statutes and for attorneys' fees and experts' fees in civil rights cases. *Id.*

Next, in counts five, seven, eight, ten, fourteen, and fifteen of the complaint, plaintiffs assert, pursuant to 42 U.S.C. § 1983, that they were unconstitutionally arrested, detained and denied a fair trial. Defendants Nichols, Davis, Dodson, and Smith are not identified in any factual allegation contained in the complaint as participating in the actual arrests, as causing these arrests to take place, or failing to prevent the same.

The elements of a § 1983 claim are: "(1) the defendants acted under color of state law, and (2) the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Kuha v. City of Minnetonka,* 365 F.3d 590, 596 (8th Cir.2003) (citation and quotations omitted). While plaintiffs allege that certain defendants: were involved in the arrests, in bringing false charges against plaintiffs, in misleading the court regarding their incarceration in connection with the custody of their children, and authored and prepared false affidavits, the complaint contains no factual allegations indicating that Nichols, Davis, Dodson, or Smith, perpetrated any of these acts or, in fact, had anything to do with causing or effecting plaintiffs' arrests or incarceration.

Moreover, private attorneys do not act under color of law and are not subject to suit under § 1983. *DuBose v. Kelly*, 187 F.3d 999 (8th Cir. 1999). Nichols, Davis, Dodson, and Smith were not acting under color of state law while representing the plaintiffs in connection with the

-13-

criminal charges. *See e.g., Polk County v. Dodson*, 454 U.S. 312, 318, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981) (public defender does not act under color of state law when performing traditional functions as counsel); *DuBose*, 187 F.3d at 1002-1003 ("[C]onduct of counsel generally does not constitute action under color of law."); *Dunn v. Hackworth*, 628 F.2d 1111, 1112 (8th Cir. 1980)("The actions of privately retained counsel are not considered state action and therefore cannot form the basis of a § 1983 claim.").

This fact is not altered by plaintiffs naked assertion that all the defendants conspired to perpetrate or accomplish the complained of actions. A conspiracy claim requires allegations of specific facts showing a meeting of the minds among the alleged conspirators. *Snelling v. Westhoff*, 972 F.2d 199, 200-01 (8th Cir. 1992)(en banc). No such specific factual allegations are found in the complaint with respect to Nichols, Davis, Dodson, or Smith.

Finally, we believe the plaintiffs have failed to state a cause of action under RICO against Nichols, Davis, Dodson, and Smith. Section 1962(c) of RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in . . . interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). "Section 1964(c) allows a private party, who has been injured in his property from a RICO violation, to sue for damages." *Wisdom v. Fist Midwest Bank of Poplar Bluff*, 167 F.3d 402, 406 (8th Cir. 1999). "To state a RICO claim, the [plaintiffs] must show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Id.* (*quoting Sedima, S.P.R.L. V. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985)).

AO72A
(Rev. 8/82)

For a pattern to exist there must be at least two acts of racketeering activity. 18 U.S.C. § 1961(5). These acts must be related and must "amount to or pose a threat of continued criminal activity." *United Healthcare Corp. v. American Trade Ins. Co., Ltd.*, 88 F.3d 563, 571 (8th Cir. 1996)(citation omitted). In defining racketeering activity § 1961(1) lists the various predicate acts that will support a RICO claim. 18 U.S.C. § 1961(1).

Here, plaintiffs allege that the defendants' racketeering activity consists of violating the constitutional rights of citizens, including the denial of due process, causing families and citizens to expend time for court appearances and court costs, fines, or fees as a result of unlawful arrests, discouraging through investigations of underlying allegations of unlawful detainment, false police reports, police brutality, use of excessive force, and denial of due process. *Complaint* at ¶ 233. Nichols, Davis, Dodson, and Smith are four attorneys who were retained, at various times, by the plaintiffs to assist the plaintiffs in some aspect of handling the criminal charges against the plaintiffs or with respect to the custody proceedings involving plaintiffs' two children. None of the attorneys were involved in making the arrests at issue or bringing criminal charges against the plaintiffs. Plaintiffs' RICO claims fail because they have not allege the existence predicate acts that may constitute racketeering activity under RICO. Moreover, there is no suggestion that the predicate acts amount to, or pose a threat of, continued criminal activity.

## **CONCLUSION**

I therefore recommend that the motions to dismiss (Doc. 87, Doc. 96 & Doc. 101) be granted and that all claims against Johnny L. Nichols, Erwin L. Davis, Michael Dodson, and Joseph Paul Smith be dismissed.

AO72A
(Rev. 8/82)

**The parties have ten days from receipt of this report and recommendations to file objections to the same pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 18th day of October 2006.

                                                           /s/ Beverly Stites Jones
                                                           UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)